**WISCONSIN BANKERS ASSOCIATION et al., Plaintiffs,**

v.

**Albert J. ROBERTSON et al., comprising the Federal Home Loan Bank Board, Defendants.**

Civ. A. No. 1647–58.

United States District Court
District of Columbia.

Oct. 26, 1960.

Harvey W. Peters, Milwaukee, Wis., Percy W. Phillips, Washington, D. C., for plaintiffs.

Ray E. Dougherty, Mose Silverman, Washington, D. C., for defendants.

Donald T. Senterfitt, Orlando, Fla., for Florida Bankers' Ass'n, amicus curiae.

TAMM, District Judge.

The plaintiffs, consisting of an association of Wisconsin bankers, four individual state chartered banks and one national bank, by this action request the Court to declare that certain regulations promulgated on or about March 7, 1949 by the defendant Federal Home Loan Bank Board are illegal and unauthorized and that such regulations are without the

authority of the Board, as the Board's authority is defined in Sec. 1464, Title 12, United States Code Annotated. The defendants in answer seek to uphold the legality, authorization and authority of the regulations.

During the course of the pre-trial proceedings held before the Pre-Trial Examiner of this Court, the parties agreed to submit to the Court for decision two fundamental issues of law which constitute the basis for this action with the stipulation that the Court's ruling upon these points of law will determine the future course which the case will follow in the Court. The pre-trial stipulation provides at paragraph 15:

"The parties stipulate and agree that the proceedings could be expedited and simplified by the Court first determining two legal issues identified as follows—

"(a) The legality of the regulations (and charter provisions) promulgated and maintained by defendants as a Board since on or about March 7, 1949.

"(b) The plaintiffs' legal standing to sue upon the basis of the defendants stipulating for purpose of determining this question that the business of banking may be conducted in Wisconsin by only such organizations, including plaintiffs, as are chartered to operate as banks, and upon the assumption for the purpose of determining this question that the factual allegations of the complaint are true."

The Court has heard argument in open court upon each of the above questions, and counsel on both sides have filed with the Court briefs detailing their positions upon these questions. The Court will treat in this opinion the questions individually.

*1. The legality of the regulations (and charter provisions) promulgated and maintained by defendants as a Board since on or about March 7, 1949.*

The defendant Board was created by Act of Congress known as the Home Owners' Loan Act of 1933. Sec. 1464, Title 12, United States Code. The defendant Board is authorized and directed by its governing regulation to provide rules and regulations for the operation of Federal savings and loan associations in the following language:

"(a) In order to provide local mutual thrift institutions in which people may invest their funds, and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations,' and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States.

"(b) Such associations shall raise their capital only in the form of payments on such shares as are authorized in their charter, which shares may be retired as is therein provided. No deposits shall be accepted and no certificates of indebtedness shall be issued except for such borrowed money as may be authorized by regulations of the Board."

The plaintiffs allege that in accordance with the provisions of Title 12, United States Code Annotated as cited above, the defendant Board did prescribe rules and regulations which were in accordance with the authorization of Congress until the enactment of the regulations of March 7, 1949. The plaintiffs claim that the 1949 regulations (published in the Federal Register, Volume 14, Number 47, March 11, 1949) are illegal in that they are not in accord with the enabling statute and that they are beyond the authority of the defendants to promulgate and maintain. Generally, the plaintiffs say that the amended regulations, particularly in using the word, "saving," in the 1949 regulations, as distinguished from the word, "share," in the original regulations and through the subsequent defi-

nitions, have so changed the basic concept of operations of the Federal savings and loan associations that they are now, in fact, in Wisconsin engaged in the banking business in violation of the plaintiffs' exclusive right to engage in that business. More specifically, the plaintiffs charge that under the 1949 regulations, the defendants are permitting Federal savings and loan associations to accept "deposits" in "savings accounts" in violation of the Congressional mandate that the associations shall raise their capital only in the form of payments on shares. The plaintiffs allege other procedures now prevalent, they say, in the Federal savings and loan associations in Wisconsin which emphasize the plaintiffs' position that the defendants are permitting the Federal savings and loan associations to accept deposits in savings accounts, thereby enabling them to actually engage in the banking business.

The plaintiffs say, in summary form, the 1949 regulations are invalid in that:

(1) the form of capital prescribed by law—shares as authorized in the charter of each individual association—has been eliminated.

(2) the capital raising activity prescribed by law—receipt of payments on shares authorized—has been eliminated.

(3) the word, "share," as used in the statute to describe the form of capital prescribed for federal savings and loan associations has been deleted in the regulatory definitions prescribing capital under the amended regulations.

The defendants, of course, deny these allegations.

Exhibit No. 1 attached to the joint pretrial statement is a summary comparison of the principal changes in regulations and charter provisions of the federal savings and loan associations effected by the Federal Home Loan Bank Board in 1949 as they are challenged by the plain-

tiffs; thus, the regulations discussed hereafter are part of the record before this Court.

■    Section 141.3 of the 1949 regulations defines the capital of a federal savings and loan association as the aggregate of the payments on savings accounts in a federal association plus earnings credited thereto less lawful deductions therefrom. The following Section, i. e., 141.4 defines savings account as the monetary interest of the holder thereof in the capital of a Federal association and consists of the withdrawal value of such interest. Of necessity, then, the capital of a federal savings and loan association may only be raised through payments into so-called savings accounts plus earnings credited thereto. By placing funds in a savings account, the depositor contributes capital to the savings and loan association. In exchange, he acquires a share interest in the capital of the association equivalent to the withdrawal value of his interest. The legal relationship resulting from the creation of this interest is not, however, that of debtor and creditor. At all times, the depositor's sole claim against the association is as a shareholder having a claim in the withdrawal value of his interest *at the time of his withdrawal.* It is obvious, then, that this relationship is legally distinct from that existing between a bank and its depositor in which the latter is to the amount of his deposit a creditor of the former.[1] The 1949 regulations provide that the depositor in the federal savings and loan association acquires only an ownership or share interest in the association's capital measured by the amount paid into his savings account plus any earnings thereafter credited to such account. The distinction between the status of the savings and loan association depositor and the bank savings account depositor in the event of insolvency of an institution is obvious. Further emphasis to this status is found

1.  Bank of Republic v. Millard, 10 Wall. 152, 77 U.S. 152, 19 L.Ed. 897; Scammon v. Kimball, 92 U.S. 362, 23 L.Ed. 483; Hardee v. George H. Price Co., 67 App.D.C. 25, 89 F.2d 497.

in Section 143.3 of the regulations relating to the initial steps to be taken in forming an association in which there is specific provision that the subscriptions to the capital of the institution shall be paid into a "savings account."

■ The defendants in their trial brief point out another important distinction between the status of a bank depositor and a depositor in a savings and loan association. A bank depositor does not in that status have any voice in the administrative operation of the bank but is in all respects a mere creditor. On the other hand, a depositor in a federal savings and loan association becomes a member of the association and is entitled to vote in determining management policies. This fact again emphasizes the status of the depositor as a shareholder.

Reference is next made to Section 145.2 of the challenged regulations. This section provides that a federal savings and loan association "shall issue to each holder of its savings accounts an account book, or a separate certificate, evidencing the ownership of the account and the *interest of the holder thereof in the capital of such federal association.*" (Emphasis supplied.)

Other sections of the regulations are quoted by the defendants as further substantiating their position in this case, but the Court believes that further enumeration of these provisions and their legal significance is unnecessary for the purpose of this opinion. The Court must look to actualities rather than terminologies in this situation. The legal distinctions between the status of a depositor in a bank and a depositor in a federal savings and loan association are well defined. It is probable, as plaintiffs suggest, that many depositors in federal savings and loan associations do not recognize their legal status or the distinctions that exist between their savings accounts and a similar account in a state or national bank. This lack of understanding, or lack of interest, has not however anything to do with the legality of the defendants' regulations. There is nothing

in the record to indicate that depositors in a federal savings and loan association are being misled. Their status is correctly defined in the regulations and in the account books or certificates which are issued to them. The fact that the word, "savings," is used now where the word, "shares," or "shareholders," was used prior to 1949 has no significance in determining the legality of the action of the defendants. As a matter of fact, Congress has specifically provided that a federal association shall be called a "savings and loan association."

The observations which the Court has outlined to this point, while confined in the Court's discussion to regulations, apply equally to the charter changes which are similarly the subject of plaintiffs' complaint.

The Court is of the opinion that the 1949 regulations of the Federal Home Loan Bank Board here under attack are legal, authorized and enacted within the authority of the Board.

The Court must point out that the question of whether the conduct of the federal savings and loan associations in accepting "deposits" in "savings accounts" constitutes "engaging in banking business" is not before the Court for decision at this time.

*2. The plaintiffs' legal standing to sue upon the basis of the defendants stipulating for purpose of determining this question that the business of banking may be conducted in Wisconsin by only such organizations, including plaintiffs, as are chartered to operate as banks, and upon the assumption for the purpose of determining this question that the factual allegations of the complaint are true.*

■ The plaintiffs allege that they have an exclusive right to conduct a banking business within the State of Wisconsin and that this right has been invaded by federal savings and loan associations illegally conducting a banking business since promulgation of the regulations of March 7, 1949 by the Federal Home Loan Bank Board, to the loss and damage of the plaintiffs. In addition,

the plaintiffs contend that the defendants as administrative officials have acted illegally, that the illegal acts are individual acts and not sovereign acts, that the defendants' acts are ultra vires and therefore may be made the object of specific relief, since the defendants' illegal acts have resulted in a tortious invasion of plaintiffs' property right to exclusively conduct banking business in the State of Wisconsin. The plaintiffs, therefore, invoke the provisions of Sections 1331, 1391 and 2201 of Title 28, and Section 1009 of Title 5, United States Code (The Administrative Procedure Act).

The defendants answer that they have not undertaken to regulate the plaintiffs in any way, have not ordered the plaintiffs to abandon any of their activities, nor have they subjected plaintiffs to any obligations or duties. Defendants say that the plaintiffs' complaint is merely that they are suffering competition from federal savings and loan associations, that Congress has granted the plaintiffs no right to be free from such competition, and that the plaintiffs' sole object is to eliminate a competition which they fear. The defendants deny that the plaintiffs have alleged any injury or threat to a particular right of their own and therefore challenge the plaintiffs' status to sue.

Briefly stated, then, the defendants rely upon a substantial number of cases cited in the footnote below which set forth the established principle that in order to have status to sue, the plaintiffs must establish that some legal interest of theirs, personal to them and recognized by law, has been violated to their legal injury.[2] The Court has carefully reviewed the cited cases and finds in them no situation legally comparable to the status of these defendants. Collectively the plaintiffs by federal or state charters are empowered to conduct banking business in the State of Wisconsin. No other institutions are so empowered. The plaintiffs' charter, then, represents a property right which they are entitled by law to protect. As indicated, this status differentiates these plaintiffs from all of the plaintiffs in the enumerated cases.

The defendants challenge the applicability of Section 10 of the Administrative Procedure Act, basically upon the contention that the plaintiffs do not show a legal wrong because of agency action. As indicated, the Court believes that plaintiffs have legal rights for the protection of which they are entitled to seek judicial action and legal redress. The Court concludes, consequently, that the plaintiffs do have the necessary standing to maintain this suit.

In summation, then, the Court is of the opinion (1) that the plaintiffs have legal capacity to maintain this action, but that (2) the regulations and charter changes promulgated by the defendants are within their statutory authority and are authorized and legal. The Court, accordingly, finds for the defendants upon this second point.

---

2. Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374; Tennessee Electric Power Co. v. T. V. A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108; Benson v. Schofield, 98 U.S.App.D.C. 424, 236 F.2d 719; Kansas City Power & Light Co. v. McKay, 96 U.S.App.D.C. 273, 225 F.2d 924.