CAMDEN TRUST COMPANY, Appellant,

v.

Ray M. GIDNEY, Comptroller of the Currency, et al., Appellees.

No. 16575.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 14, 1961.

Decided Jan. 18, 1962.

Petition for Rehearing En Banc Denied
En Banc Feb. 20, 1962.

Certiorari Denied May 21, 1962.
See 82 S.Ct. 1158.

Chief Judge Miller and Circuit Judge Bastian would grant the petition for rehearing en banc.

Mr. Samuel D. Slade, Philadelphia, Pa., for appellant. Mr. Paul A. Sweeney, Washington, D. C., also entered an appearance for appellant.

Mr. John G. Laughlin, Jr., Atty., Dept. of Justice, with whom Asst. Atty. Gen., William H. Orrick, Jr., and Mr. David C. Acheson, U. S. Atty., were on the brief, for appellee Gidney.

Mr. Martin P. Snyder, Philadelphia, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, with whom Mr. J. David Mann, Jr., Washington, D. C., was on the brief, for appellee Delaware Valley National Bank of Delaware Township. Mr. J. Louis Monarch, Washington, D. C., also entered an appearance for appellee Delaware Valley National Bank of Delaware Township.

Mr. Lawrence J. Latto, Washington, D. C., filed a brief on behalf of the State of New Jersey, as amicus curiæ urging reversal.

Mr. James F. Bell, Washington, D. C., filed a brief on behalf of National Association of Supervisors of State Banks, as amicus curiæ, urging reversal.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Appellant, Camden Trust Company, is a banking corporation organized under the law of New Jersey with its principal office in Camden and, since 1953, with a branch at Erlton in Delaware Township, New Jersey. Seeking declara-

tory and injunctive relief, appellant challenged the Comptroller's authority under pertinent provisions of the National Bank Act,[1] to issue a certificate of authority which would permit the intervenor, Delaware National Bank of Delaware Township, to commence the business of banking. The District Court granted summary judgment to the Comptroller and the intervenor and dismissed the complaint.[2]

On this appeal, appellant argues that under New Jersey's Banking Act of 1948,[3] no other state bank could establish a branch in Delaware Township. Accordingly, it is urged that no national bank can establish a branch[4] at Ellisburg Circle in Delaware Township, only one mile from appellant's branch at Erlton. The Haddonfield National Bank, located in the adjacent Borough of Had-

donfield, had sought in 1960 to locate its main office in Delaware Township while retaining as a branch its Haddonfield office, only two miles from Ellisburg Circle. The Comptroller denied that application, correctly we think,[5] for clearly the application related to a *branch*, not a "new" bank.

Shortly thereafter, eight of Haddonfield National's nine directors, later joined by the ninth, as individuals signed and filed an application for the incorporation of a new national bank at the Ellisburg Circle location. Appellant filed objections to the application and by appearance before the Comptroller voiced its protest. The Comptroller nevertheless indicated his intention to approve, whereupon Camden filed this action. Its complaint in the District Court alleged that the application of the Haddonfield di-

---

1. 12 U.S.C.A. §§ 21–27 as amended, 12 U.S.C.A. §§ 21a, 24, 26. Section 27 provides with respect to a "new" duly qualified banking association, that the Comptroller "shall" grant a certificate of authority, but "may withhold" a certificate "whenever he has reason to suppose that the shareholders have formed the same for any other than the legitimate objects contemplated by this chapter."

2. The Comptroller pendente lite, agreed to an administrative stay of issuance of a certificate of authority to the intervenor.

3. N.J.S.A. 17:9A–1(2) so defines "banking institution" as to include a "national banking association," and 17:9A–19 provides in pertinent part:
   "B. No bank or savings bank shall establish or maintain a branch office which is located outside the municipality in which it maintains its principal office; except that a bank or savings bank may establish and maintain a branch office or offices anywhere in the same county as that in which it maintains its principal office.
      \*       \*       \*       \*       \*
   "(3) When each proposed branch will be established in a municipality in which no banking institution has its principal office or a branch office."

4. Resolution of our issue turns on whether or not intervenor is a "branch." Of course, "there is no discretion in Comptroller to approve the establishment of a branch office at a location prohibited by law." Commercial State Bank of Rose-

ville v. Gidney, 174 F.Supp. 770, 778 (D.D.C.1959), aff'd, 108 U.S.App.D.C. 37, 278 F.2d 871 (1960). Appellant to fortify its contention points to 12 U.S.C.A. § 36 which reads in pertinent part:
   "(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.
      \*       \*       \*"

5. National Bank of Detroit v. Wayne Oakland Bank, 252 F.2d 537 (6 Cir.), cert. denied, 358 U.S. 830, 79 S.Ct. 50, 3 L.Ed. 2d 69 (1958); Michigan National Bank, Lansing, Michigan v. Gidney, 99 U.S.App. D.C. 134, 237 F.2d 762, cert. denied, 352 U.S. 847, 77 S.Ct. 55, 1 L.Ed.2d 54 (1956); First National Bank in St. Louis v. Missouri, 263 U.S. 640, 658, 659, 44 S.Ct. 213, 68 L.Ed. 486 (1924); cf. Franklin Nat. Bank of Franklin Square v. New York, 347 U.S. 373, 378 n. 7, 74 S.Ct. 550, 98 L.Ed. 767 (1954).

rectors was "on its face a manifest subterfuge to circumvent the provisions and purposes of the National Bank Act by attempting to introduce into Delaware Township a banking facility that will for all practical purposes constitute a branch facility of the Haddonfield National Bank. Issue of a Certificate of Authority in such a case is contrary to law, beyond the defendant's authority, and a clear abuse of his discretion."

Whatever weight is to be given to the appellant's legal argument, it is difficult to think of the Haddonfield directors' action as a "subterfuge," [6] at least in an invidious sense. On the contrary, the preliminary proceedings seem to have been open and notorious. Perhaps on that account the "subterfuge" was alleged to be "manifest." The president of the Haddonfield National Bank on its letterhead notified all of its shareholders of the plan and the objective which the directors sought.[7] Appellant protested orally and in writing to the Comptroller. The latter and the New Jersey Bank Commissioner [8] corresponded concerning the project. It fairly may be said that we perceive nothing arcane or wrongfully covert in the effort. The respectively zealous competitors really are at issue, we feel sure, solely as to whether or not the Comptroller in the circumstances shown is to be precluded by law from issuing a certificate of authority to the intervenor.

Thus viewed in its fundamentals, the case would seem to turn, not on the Comptroller's power but on its exercise. It is not claimed that the Comptroller

---

6. Subterfuge. "A device, plan, or the like, to which one resorts for escape or concealment; an artifice employed to escape censure or the force of an argument, or to justify opinions or conduct; an evasion." MERRIAM-WEBSTER NEW INTERNATIONAL DICTIONARY (2d ed. 1959). Cf. Los Angeles Fisheries v. Crook, 47 F.2d 1031, 1035 (9 Cir. 1931).

7. As an exhibit to appellant's complaint, the following letter, on the Bank's letterhead, was reproduced:

December 8, 1960

To the Shareholders of Haddonfield National Bank

On many occasions your Board of Directors and Officers have been invited by the residents and business men of Delaware Township to extend banking facilities to that area by the establishment of a branch office in that fast growing municipality. Under the New Jersey banking law, to which we are subject with regard to branches, it is not permissible for a bank, other than in its home community, to establish a branch office in a municipality where a banking office already exists. It is possible, however, to apply for a charter to start a new bank where the need, both present and future, would appear to exist. In line with that reasoning your Board of Directors as individuals, applied and have received from the Comptroller of the Currency, preliminary approval to establish a new bank to be known as the DELAWARE VALLEY NATIONAL BANK OF DELAWARE TOWNSHIP, to be located in the Barclay Farm area.

The new bank proposes to issue 22,500 shares ($10 par) stock at $23.00 per share and the proceeds from the stock sale will be divided as follows:

Capital ............. $225,000.00
Surplus ............ 225,000.00
Undivided Profits .... 67,500.00

It is expected that the DELAWARE VALLEY NATIONAL BANK will be an affiliate of the Haddonfield National Bank and that its affairs will be conducted by the same management and under the same policies as the Haddonfield National Bank.

The Board of Directors of the Haddonfield National Bank feels this is a very worthwhile undertaking and as shareholders you are invited to subscribe for shares in the new bank. Will you please indicate on the stub, which appears at the bottom of this letter, *whether or not* you are interested in purchasing shares in the new bank and to what extent. We would appreciate hearing from you within the next 10 days and a self-addressed postage paid envelope is enclosed for your convenience when replying.

Sincerely,

/s/ H. Moeller

President

8. The State of New Jersey, taking a position similar to that of the appellant, has been allowed to file a brief as amicus curiae. A like privilege was accorded to and accepted by the National Association of Supervisors of State Banks.

may not charter a "new" bank. Rather it is urged, he must permit the creation only of a "bona fide independent national bank doing business within its four walls." For that narrow proposition appellant points to 12 U.S.C.A. § 36(c).[9] We read the section as saying that the Comptroller affirmatively is empowered to authorize a national banking association to establish and operate new branches if, when and where state law permits state banks to do so.[10] The amendment subsequent to First National Bank in St. Louis v. Missouri, is clear on its face and says, without ambiguity, exactly what it means. Beyond peradventure, Congress even defined the term "branch."[11]

Appellant next would say, the intervenor will be "an affiliate" of the Haddonfield National Bank, referring to its exhibit, set forth in full in note 7. We read that language as an assurance to shareholders of Haddonfield that the trusted management of Haddonfield and the policies pursued in the past may justify investment in the shares of the new bank. The directors of Haddonfield who as individuals were committing themselves and their capital sought information as to "whether or not" existing shareholders "are interested in purchasing shares in the new bank and to what extent." They were to be required to raise $517,500 "which would result in a legal loan limit of $50,000—the same as that of Camden Trust Company's branch at Erlton," the appellant tells us in its brief. We see nothing sinister in a banker's prudent inquiry as to just where the promoters were to stand.

There is nothing in the record to show that the shareholders formed the association "for any other than the legitimate objects" contemplated by the Act. The Haddonfield National Bank has not been shown to own the intervenor even if some of the stockholders and directors of the former should own some of the shares of the latter. The intervenor clearly is not a branch of Haddonfield but is a completely separate entity with certain distinguishing characteristics sufficiently so set up in the Government's brief as to justify our quoting verbatim:

"The capital structure of Delaware Valley is totally independent of that of Haddonfield National; the stock of Delaware Valley has been subscribed to and 'paid in' as required by 12 U.S.C. 53; Delaware Valley stockholders are subject to the individual liability described in 12 U.S.C. 63 [sic; repealed, 73 Stat. 457 (1959); see 12 U.S.C. § 64a], unrelated to their possible liability as shareholders in Haddonfield National; the Comptroller has assigned a name to Delaware Valley that is not susceptible of confusion with Haddonfield National; Delaware Valley will be located approximately two miles from the main office of Haddonfield National * * * the general business of banking to be conducted by Delaware Valley will 'be transacted in the place specified in its organization certificate' (12 U.S.C. 81); deposits with Delaware Valley will be its liability not that of Haddonfield National; loan limitations on Delaware Valley will be those applicable to an independent bank, based on its own capital structure and totally independent of loan limitations applicable to Haddonfield National (12 U.S.C. 84); the limits of indebtedness which may be incurred by Delaware Valley will be as prescribed in 12 U.S.C. 82 and

---

9. Supra note 4, and of course, to New Jersey law, supra note 3.

10. Congress in § 36(c) did no more than "remedy the omission." See First National Bank in St. Louis v. Missouri, supra note 5, 263 U.S. at 659, 44 S.Ct. 213.

11. 12 U.S.C.A. § 36(f). Even if it properly may be said that intervenor is an "affiliate" of Haddonfield, Congress has recognized a distinction between a "branch" and an "affiliate." See 12 U.S.C.A. §§ 221a, 377, 481; 12 U.S.C.A. §§ 161(c), 371c.

independent of similar limitations on Haddonfield National; the directors of Delaware Valley have been elected by its shareholders (12 U.S.C. 71), meet the citizenship, residence, and stock-ownership requirements specified in 12 U.S.C. 72, and: 'If the directors * * * shall knowingly violate, or knowingly permit any of [the] officers, agents, or servants * * * to violate any of the provisions of [12 U.S.C. 21–214c], all the rights, privileges, and franchises of the association shall be thereby forfeited. * * *' 12 U.S.C. 93."

It is not within our province to pass upon the desirability *vel non* of permitting a national bank to have an "affiliate," as the appellant has here used the term. If such an affiliate is to be denied status, Congress must clearly say so. It is sufficient for our disposition of the present controversy to observe that what was done was within the authority conferred by existing statutes. Convinced, as we are, that 12 U.S.C.A. § 36 has no applicability to the situation disclosed on this record, we deem it unnecessary to consider other contentions urged upon us.[12] Accordingly, the judgment of the District Court is

Affirmed.

BASTIAN, Circuit Judge (dissenting).

Congress, in 12 U.S.C.A. § 36(c)(2), provided:

"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: * * * (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recog-

nition, and subject to the restrictions as to location imposed by the law of the State on State banks."

Under the banking laws of the State of New Jersey, a new branch bank may not be located in Delaware Township because there is a pre-existing banking office in that municipality. This is by virtue of the Banking Act of 1948 of the State of New Jersey (N.J.S.A. 17:9A–19), which provides in part as follows:

"B. No bank or savings bank shall establish or maintain a branch office which is located outside the municipality in which it maintains its principal office; except that a bank or savings bank may establish and maintain a branch office or offices anywhere in the same county as that in which it maintains its principal office."

I think appellant is correct in its argument that:

"The facts plainly show that the transaction here involved, in form an application for a 'new' bank charter, is, in substance a subterfuge to obtain a forbidden branch facility. These facts, fully known to the Comptroller, imposed a statutory duty on him to reject the application. This duty would follow the application of the familiar general principle that form will be disregarded whenever necessary to prevent evasion of the clear purpose of a statute. But the duty is made clear beyond question here by consideration of those statutory provisions from which alone the Comptroller derives his authority, the consistent interpretation of those provisions, and the strong and affirmative Congressional policy as to the nature of the Comptroller's authority.

"A. The 1933 branch bank legislation was preceded by over a quarter of a century of concern by the Comptroller of the Currency as to his lack

---

12. We therefore do not discuss the District Court's conclusion that the appellant is without standing.

of authority to authorize branching by national banks and his repeated recommendations to Congress that he be given such authority. The Congressional history of the 1933 legislation makes plain that the Comptroller was only empowered to authorize national banks to establish branches on the basis of precise competitive equality with state banks. Accordingly, national banks could establish outside branches only in states where such branches were '* * * authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition * * *.' The debates which led to this strictly circumscribed branching authority are outspoken in their condemnation of the use of chain or 'affiliate' banks as devices for evading branch banking restrictions or prohibitions.

"Thus, the only power added to the Comptroller's original authority to charter *bona fide* unit independent banks was the authority to permit branching as permitted by the statute law of the state in question, on a basis of precise equality with state banking systems."

While my colleagues take exception to appellant's use of the word "subterfuge," I think that one of the definitions quoted by them, namely "an evasion," covers the action of appellee like a glove.

The State of New Jersey, which has filed an *amicus* brief, contends, correctly I think, that "if an application for a new State banking charter were made under the same circumstances, it would be regarded in its substantive character as a branch application and rejected under the statute governing branch applications"; and that "[o]n the facts present in this case, the Delaware National Bank of Delaware Township should be held to be tantamount to a branch office of the Haddonfield National Bank, thereby bringing it within the scope and pro-hibition of 12 U.S.C.[A. §] 36 (C[c]) and Section 19 of the New Jersey Banking Act of 1948 (N.J.S.A. 17:9A–19)."

If substance rather than form is to prevail, the judgment of the District Court should be reversed.