**BANK OF NORTH AMERICA, Appellant,**

v.

**STATE BANKING BOARD of the State of Texas et al., Appellees.**

**No. 11829.**

Court of Civil Appeals of Texas, Austin.

June 2, 1971.

Callahan, Mulvihill & Collins, Houston, Byron Lockhart, Austin, for appellant.

Crawford C. Martin, Atty. Gen., John H. Banks, Asst. Atty. Gen., Austin, Jacobsen & Long, Joe R. Long, Austin, Liddell, Sapp, Zivley & Brown, Willis Witt, Houston, for appellees.

SHANNON, Justice.

Appellant Bank of North America has appealed from a judgment of the District Court of Travis County refusing its application for temporary injunction to enjoin the State Banking Board from making effective its approval of a charter for Southeast Bank to be located in Houston. In this opinion Southeast Bank will be referred to as "Southeast", Texas Commerce Bank as "Commerce," Bank of North America as "Appellant", and the State Banking Board as "Board."

The preliminary facts are as follows. In early 1969 Southeast applied for a charter to be located near the intersection of Telephone Road and Bellfort Street in Houston. Later that year appellant bank, located about two and one-half miles away, applied for permission to move to a site near the Telephone Road and Bellfort intersection, taking the basic position that it, rather than Southeast, should have that location. In April 1969, both applications were denied, and there was no appeal from that decision.

Still later in 1969 Southeast, apparently constituted by a different group, again filed for a charter at the same location, and appellant again applied for permission to move to that same site. On May 20, 1970 the State Banking Board heard Southeast's application which was vigorously contested by appellant and another area bank, and on August 12, 1970 the charter of Southeast was approved.

Appellant urges error by four points, asserting that the issuance of the charter of Southeast was: (1) in violation of Article XVI, Section 16 of the Texas Constitution, Vernon's Ann.St.; (2) in violation of the anti-trust laws of Texas; (3) in violation of "fundamental due process;" and (4) that

the trial court erred in excluding as evidence a portion of a report of a State Banking Board investigator.

Appellant does not fault that portion of the court's judgment that the State Banking Board order granting Southeast a charter is reasonably supported by substantial evidence. In that connection the court found, in accordance with Art. 342–305 of the Texas Banking Code, Vernon's Ann. Civ.St., that a public necessity existed; that the proposed capital structure of Southeast was adequate; that the volume of business at the proposed site was such as to indicate a profitable operation by Southeast; that the proposed officers and directors of Southeast had sufficient experience, ability, and standing to render success of Southeast probable; and that the applicants were acting in good faith.

In the beginning it should be observed that this is an appeal from an order refusing a temporary injunction. In considering a temporary injunction the trial court has broad discretion to grant or deny the injunction. And in appeals from the denial of a temporary injunction the judgment of the trial court should not be disturbed unless it is evident that from the record that the court abused its discretion. Janus Films, Inc. v. City of Fort Worth, 163 Tex. 616, 358 S.W.2d 589 (1962).

The gravamen of appellant's first point is that Southeast is but a branch bank of the Texas Commerce Bank, a large downtown Houston bank, and, as such, is in violation of Article XVI, Section 16 of the Texas Constitution. Article XVI, Section 16 reads in part as follows: "Such body corporate [a bank] shall not be authorized to engage in business at more than one place which shall be designated in its charter."

Section 16 of Article XVI has not been judicially construed although the Attorney General's office has written several opinions concerning its application to given situations. The most comprehensive of those opinions was written to the State Banking Board by Attorney General Price Daniel in 1952. That opinion held that Section 16, more than just prohibiting a single banking corporation from directly engaging in business at more than one place, was intended to effectuate a State policy requiring that each banking corporation operate as an independent unit. Section 16 was construed to prohibit one bank from organizing separate banks and then dominating and controlling them to the extent of indirectly engaging in the banking business through the ostensibly independent banks. That opinion stated further that Section 16 does not prohibit stockholders of one bank from owning stock in another bank and, if the only affiliation between two banks were the ownership of the majority of the stock in each bank by the same person, then that alone would not constitute a violation of Section 16. However, if stockholders in one bank acquire controlling interest in another bank for the purpose of operating that bank as an instrumentality or agency, and so arrange the corporate control so that one bank actually dominates and controls the operations of the other bank, then, in the opinion of the Attorney General, this arrangement would violate Section 16.

Appellant and appellee cite out of state authority concerning "branch banking" which we find to be of little assistance in view of the difference between the statutes of those states and Section 16 of Article XVI of the Constitution.[1]

1. Appellee cites

Goldy v. Crane, 445 P.2d 212 (Colorado 1968), First National Bank in Billings v. First Bank Stock Corporation, 306 F.2d 937 (9th Cir. 1962), The Peoples Bank v. The Banking Board of The State of Colorado, 164 Colo. 564, 436 P.2d 681 (Colorado 1968), Camden Trust Co. v. Gidney, 112 U.S.App.D.C. 197, 301 F.2d 521 (1962), In Re Application of Kenilworth State Bank, 49 N.J. 330, 230 A.2d 377 (New Jersey 1967)

Appellant cites

In Re Princeton Bank & Trust Company, 87 N.J.Super. 247, 208 A.2d 820

Appellant alleged that Southeast is a creation of Commerce and that while ostensibly they are separate entities, Southeast will be subject to the control of Commerce. Appellant alleged further that Southeast proposed to issue 30,000 shares of stock, and of that sum, 11,740 shares were subscribed to by the members of one law firm, Liddell, Dawson, Sapp and Zively, of Houston, and that 2,800 more of those shares were subscribed to by employees and officers of Commerce. Appellant alleged further that the Liddell firm represented both Commerce and Southeast and that the members of that firm were "admitted agents" of Commerce.

■ Assuming, as contended by appellant, but not deciding, that the Attorney General's Opinion of 1952 is the law, we think that under that opinion appellant failed to make a case. Central to the Attorney General's Opinion is the fact of stockholders in one bank owning a majority or a controlling amount of stock in another bank. The bare fact of ownership, without more, does not constitute a violation of Section 16. It is not shown by this record that stockholders of Commerce own more than, at the most, 2,800 shares of stock in Southeast. One thousand of the 2,800 shares were subscribed to by an officer of Commerce who is the proposed president of Southeast. The remaining 1,800 shares of stock constitute about 6% of the stock issued.

Appellant says that because the Liddell firm owns 11,740 shares, and officers and employees of Commerce own 2,800 shares of Southeast stock, that as a "matter of law" Southeast was "merely being organized as an adjunct, instrumentality or agency" of Commerce. We cannot agree with this contention. The flaw in appellant's reasoning is its premise, stated but not proved, that the members of the Liddell firm are "admitted agents" of Com-

merce. The mere fact of the firm's representation of Commerce coupled with ownership of stock in Southeast, without further evidence, is not a sufficient showing to constitute the members of that firm agents for Commerce in a transaction of this character. There was no evidence that members of the firm were holding the stock other than for themselves. The evidence was also that besides the Liddell firm, two other firms of attorneys represented Commerce. This Court may take notice of the fact that it is common practice for members of law firms to own shares of stock of corporate clients and, in so doing, be not acting as agents for such clients. It is generally thought, or at least hoped, that the stock ownership will be profitable and will possibly act as a factor in the continued representation of the client by that law firm.

Appellant also points to the fact that Charles Sapp of the Liddell firm was active in soliciting subscribers for Southeast, and that he was a director of Commerce. Appellant then argues that because Sapp's firm also represents Commerce, as well as Southeast, that Sapp was in reality acting for Commerce to further its alleged plan to dominate Southeast. Appellant produced no proof in this connection, and we do not think we are warranted in inferring this to be so.

In the first application for Southeast in the early part of 1969 initially approximately 91% of the stock ownership was subscribed for by Texas Commerce Shareholders Company and Willis Witt, one of the members of the Liddell law firm, on his own behalf and as trustee for undisclosed persons. At the time of the first hearing by the State Banking Board, the proposed shareholders had been substantially changed. As noted previously, the Board denied the first application. Appellant claims that this same "combination made its second bid to incorporate South-

(New Jersey 1965), Whitney National Bank v. Bank of New Orleans & Trust Co., 116 U.S.App.D.C. 285, 323 F.2d 290 (1963, rev. on other grounds 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386).

east, pursuing the same familiar pattern." Appellant failed to prove this claim in the trial court. In the first instance, there was no proof in the hearing on the temporary injunction of the relationship between Texas Commerce Shareholders Company and Commerce. Secondly, appellant did not specifically allege or prove that Texas Commerce Shareholders Company owned any shares of stock in Southeast when approved by the Board.

We also disagree with appellant's contention that because the proposed president of Southeast, W. Merriman Morton, was formerly an officer of Commerce, and that he might seek advice in the future from Commerce officers, that this is proof of a design of Commerce to dominate and control Southeast so as to constitute it a branch in violation of Section 16. We also regard, as inconclusive, the fact Commerce would probably be the main correspondent of Southeast and that some of Commerce's officers assisted in collecting economic data for Southeast's application.

■ Appellant's second point is that the issuance of the charter of Southeast was in violation of the "anti-trust laws of Texas." Appellant did not plead a violation of the anti-trust laws, but claims that this Court is entitled to consider it because it is "fundamental error." We disagree. Rule 94 of the Texas Rules of Civil Procedure specifically requires that illegality be affirmatively pleaded. Sherrard v. After Hours, Inc., 464 S.W.2d 87 (Tex.1971), concurring opinion of Justices Greenhill and Walker.

■ Appellant offered into evidence a portion of the report prepared by the Board's Investigator. That portion of the report offered by appellant read as follows, "The applicants indicated the Texas National Bank of Commerce, Houston, Texas, would be the main correspondent bank for the new bank if chartered, and that the above mentioned bank may or may not furnish financing on the stock of the proposed new bank." It should be noted here that Commerce was formerly called Texas Na-

tional Bank of Commerce. The exclusion of this offer of evidence forms the basis for its third point of error. We find it unnecessary to pass upon the admissibility of the evidence offered since, assuming but not deciding, its exclusion was error, the record reflects that the same information as contained in appellant's offer was already in evidence, and such being the case we hold that its exclusion, if error, was harmless error.

Appellant's final point urged in this Court is that the Board's order granting Southeast a charter was violative of "fundamental due process" because at the date of the *Hearing* on the application the Board consisted of Messrs. Falkner, Baum, and James while at the date of the *Approval* of Southeast's charter, Falkner was no longer on the Board. The facts in this connection are these. On May 20, 1970, the Board heard Southeast's application. Falkner was absent, and in his absence, Robert Stewart, Deputy Commissioner, attended the hearing. On August 12, 1970, when Southeast's charter was approved, Falkner was no longer on the Board, and Stewart had been appointed Commissioner. At the August meeting two members of the Board voted to approve Southeast's charter, while Stewart abstained from voting. Appellant claims that the Board which heard the application for a charter was not the same Board which approved the charter and, as such, violates fundamental due process. Appellant says that it was deprived of the "counsel and consideration of Commissioner Falkner," and it had "good reason to believe" that Falkner was opposed to granting the charter.

We hold that there was no denial of due process. Because the federal courts have held that deciding officers of agencies are not required to be present at the reception of evidence, problems resulting from the absence of officers or from changes in personnel are almost always satisfactorily taken care of through the three requirements that (1) deciding officers must consider the evidence, (2) that a quorum must

be present when the decision is made, and (3) that the presiding officer who sees and hears the witnesses testify must make an initial or recommended decision or a report on the demeanor of witnesses whenever demeanor may be a substantial factor. Kenneth Culp Davis, Administrative Law Treatise, Volume II, § 11.20, p. 122.

Professor Davis states that the law of most of the states is generally in accord with the simple and satisfactory federal law, "but with a good many qualifications and exceptions." Davis states in this connection that, " * * * Administrative action has been upheld [in state courts] where two of a three-man board were present at the time of making the decision and where the vote of the absentee was counted; where one of the three commissioners was always present at the hearing but where no single commissioner heard all the case; where twenty-six original members of a council heard a legislative matter but eleven of them were supplanted by new members before the vote was taken; where two of the three members both heard and decided without participation of the third member but where the third member later joined in the decision; and where one member voted on the basis of a reading of the evidence after being absent from the hearing, even though the statute provided that 'no member * * * who did not hear the evidence shall vote on the decision.' " Administrative Law Treatise, Volume II, § 11.20 at page 123.

Appellant relies primarily on Webster v. Texas & Pacific Motor Transport Co., 140 Tex. 131, 166 S.W.2d 75 (1942). An application for a certificate to operate a common carrier motor carrier service before the Railroad Commission was involved in that case. The material question, as stated by the Court, was whether there was such a hearing before the Railroad Commission at the time the permit was granted as was required by law. In that case the hearing was held before the examiner who made his report and presented the record to Commissioner Sadler at his office. Sadler examined the record and took it to Chairman Smith and told him that he recommended that the application be granted. The record was left in Smith's office, without any decision being reached at that time. A few days later these two commissioners met somewhere in an informal unscheduled meeting, without any notice having been given to anyone, including the third commissioner, Colonel Thompson, and agreed that the certificate should be given. The court held that the application was not passed on by the commission as a body, in the manner contemplated by the law.

This case is distinguishable from Webster, supra. There two commissioners met in an informal unscheduled meeting without notice to the third commissioner. Here the Board's meeting was a regularly scheduled meeting with notice to all Board members. The Board considered the evidence, and we are of the opinion that Southeast's application was passed on by the Board as a body, in the manner contemplated by law. The vote of two of the members of the Board to approve the charter of Southeast constituted action by the Board. State Banking Board of Texas v. McCulloch, 316 S.W.2d 259 (Tex.Civ.App. 1958, writ ref. n. r. e.).

■ Appellant was well aware at the time of the hearing that Commissioner Falkner was absent, and the record is silent as to any effort on its part to postpone the hearing. Appellant voluntarily chose to submit its case to the Board absent Falkner, and it will not now be heard to complain of his absence.

After a review of the record made on the application for temporary injunction we are not persuaded that the trial court abused its discretion in refusing to enter the temporary injunction, and accordingly, that judgment is affirmed.

Affirmed.