**PINELAND STATE BANK, a banking corporation of New Jersey, and First National Bank of Toms River, a national banking corporation, Plaintiffs,**

v.

**PROPOSED FIRST NATIONAL BANK OF BRICKTOWN and/or Bricktown National Bank, and/or National Bank of Bricktown, and William B. Camp, Comptroller of the Currency of the United States of America, Defendants.**

**Civ. A. No. 613–71.**

United States District Court,
D. New Jersey.

Oct. 4, 1971.

Barry D. Maurer, Wilentz, Goldman & Spitzer, Perth Amboy, N. J., for plaintiffs.

Alvin Weiss, Riker, Danzig, Scherer & Brown, Newark, N. J. (Frank J. Miele, Newark, N. J., on the brief) for defendant First National Bank of Bricktown.

L. Patrick Gray, III, Asst. Atty. Gen., Dept. of Justice, Civil Div., Washington, D. C., Frederick B. Lacey, then U. S. Atty., D. N. J., by Frederick W. Klepp, Asst. U. S. Atty., Trenton, N. J., Harland F. Leathers, Kenneth A. Rutherford, Office of the Comptroller of the Currency, Dept. of Justice, Washington, D. C. (John E. Shockey, Dorothy S. Kulig, Washington, D. C., of counsel), for defendant William B. Camp, Comptroller of the Currency of the United States.

## OPINION

BARLOW, District Judge.

The plaintiff Pineland State Bank (hereinafter "Pineland") is a bank organized under the laws of the State of New Jersey. Plaintiff First National Bank of Toms River (hereinafter "Toms River") is a national banking association organized pursuant to the laws of the United States. The defendant William B. Camp, Comptroller of the Currency of the United States of America (hereinafter "Comptroller"), is an officer of the Treasury Department charged with the enforcement of the laws of the United States relating to the formation and organization of national banks.

The plaintiffs here, both located in Ocean County, New Jersey, seek to set aside the preliminary approval by the Comptroller of a charter for a new national bank in Ocean County, to be named the First National Bank of Bricktown (hereinafter "Bricktown").

Following the institution of this action, and asserting that the competition to be offered by the proposed bank will cause them to suffer irreparable financial injury, the plaintiffs filed a motion for a preliminary injunction restraining the defendants from taking any further action in connection with the proposed national bank. The Comptroller, resisting the demand for injunctive relief, seeks dismissal of the complaint on the basis that it fails to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b) (6), or, in the alternative, for summary judgment in accord with the provisions of Fed.R.Civ.P. 56. The defendant Bricktown joins in the Comptroller's applications.

The facts may be summarized as follows:

Robert V. Paschon, on May 18th, 1970, made application to the Comptrol-

ler for authority to organize a national bank in Brick Township, Ocean County, New Jersey. The application was supported by the necessary information required by the Comptroller. Banks to be affected by the charter of the proposed bank were given notice of the application, as was the New Jersey Banking Commissioner, and publication of the application was made. In addition, a national bank examiner was assigned to investigate the application. The intention of the defendant Bricktown to charter a new national bank was protested by several banks in the area and a hearing was ultimately requested by the ~~defendant~~ Pineland.

The resultant hearing was held for two days, beginning October 7th, 1970, and was conducted in accordance with established federal procedures. At such hearing, the application and supporting economic data were made available for public inspection. Also, at the hearing evidence was taken and all witnesses were subject to questioning by the panel or other participants. Further, all interested parties were provided an opportunity to present additional material to the Comptroller following the hearing. Without reviewing the details of the hearing, it is sufficient to state, for the purposes of this opinion, that the application of the defendant Bricktown received unanimous recommendations of approval by the national bank examiner, the regional administrator, and the Comptroller's senior staff. As a result of the reports and recommendations made to him, as well as upon the entire record, the Comptroller, on April 14th, 1971, gave his preliminary approval to the application. Following that determination by the Comptroller, the plaintiffs instituted this action.

The complaint, in essence, requests this court to vacate the Comptroller's preliminary approval, alleging that two of the organizers of Bricktown, Robert V. Paschon and Herbert Hindin, were not acting on their own behalf but were, in fact, acting for John Giordano, Jr., and Robert Schmertz; that Mr. Giordano and Mr. Schmertz are either officers or directors of the First State Bank of Ocean County (hereinafter "Ocean County") and, as a result, that bank, its directors and shareholders, are attempting to avoid the branch banking restrictions of state and federal law by creating a new national bank as a branch or as an affiliate of Ocean County contrary to the provisions of the New Jersey Banking Act, N.J.S.A. 17:9A–3.1, as well as in violation of 12 U.S.C. § 36 of the National Banking Act.

■ With respect to their contentions that the approval of Bricktown's application offends the law of the State of New Jersey, the plaintiffs rely upon the language contained in N.J.S.A. 17:9A–3.1, which states:

"No officer, director or employee of any *bank* may be, directly or indirectly, an incorporator of another *bank*." [Emphasis supplied.]

The plaintiffs ignore, however, certain other provisions of New Jersey banking law which make it clear that N.J.S.A. 17:9A–3.1 is not designed to apply to the organization, as here, of new national banks.

The definitions contained in the New Jersey Banking Act of 1948 provide, in § 17:9A–1, as follows:

"As used in this act, and except as otherwise expressly provided in this act,

(1) *'bank'* shall include the following:

(a) every corporation heretofore organized pursuant to the act entitled 'An act concerning banks and banking (Revision of 1899),' . . .;

(b) every corporation heretofore organized pursuant to the act entitled 'An act concerning trust companies (Revision of 1899),' . . .;

(c) every corporation heretofore organized pursuant to chapter four of Title 17 of the Revised Statutes;

(d) every corporation, other than a savings bank, heretofore authorized by any general or special law of this State to transact business as a bank or as a trust company, or as both;

(e) every corporation hereafter organized pursuant to article two of this act;

(2) *'banking institution'* shall mean a bank, savings bank, and *a national banking association* having its principal office in this State; . . .."
[Emphasis added.]

Obviously, then, the word "bank" is not intended to include national banks, and, of course, N.J.S.A. 17:9A–3(B) contains no reference to the term ."banking institution", which includes, by definition, a national banking association. Clearly, it would seem, then, that 17:9A–3.1 has no application to the formation of a national bank. Moreover, New Jersey statutes relating to the organization and incorporation of state banks specifically exclude any application to the formation of national banks, it being provided in § 17:9A–2 that:

"(A) No corporation, *other than a national banking association,* shall hereafter be organized to transact the business of a bank or savings bank in this State, except as provided in this act." [Emphasis supplied.]

Accordingly, the preliminary approval of a formation of a new national bank by the Comptroller in no way transgresses the law of the State of New Jersey.

In addition, however, the plaintiffs suggest that the proposed incorporation of Bricktown offends federal law, arguing that the National Bank Act, 12 U.S. C. § 36, adopts all the restrictions imposed by the law of the State of New Jersey with respect to the establishment of branch banks in this State. And, further, it is contended that 12 U.S.C. § 36, which is the Branching Section of the National Bank Act, requires the formation of a new national bank to adhere to all of the requirements of New Jersey law relating to the organization of a state bank.

■ To begin with, federal law clearly permits the establishment by a national banking association of branch banks, § 36 of 12 U.S.C. providing:

"(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new *branches*: . . .

. . . . . . .

(f) The term 'branch' as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in the District of Columbia at which deposits are received, or checks paid, or money lent." [Emphasis added.]

■ The statutory language aforesaid obviously refers to the creation of national bank branches and has no application to the creation or establishment of a new national bank.

■ National banks are organized and chartered pursuant to the provisions of 12 U.S.C. §§ 21–27. Plaintiffs here have failed to demonstrate that the provisions thereof are designed to include or reflect state banking laws and to thereby subject national banking institutions to the often-conflicting and inconsistent restrictions imposed by the various states.

■ Moreover, a state clearly has no authority to prohibit the creation of a national bank or, once established, to confine or restrict its operations. As the Supreme Court put it, in Mercantile National Bank v. Langdeau, 371 U.S. 555, 558–559, 83 S.Ct. 520, 522, 9 L.Ed. 2d 523 (1962):

"National banks are quasi-public institutions, and for the purpose for which they are instituted are national in their character, and, within constitutional limits, are subject to the control of Congress, and are not to be interfered with by state legislative or judicial action, except· so far as the lawmaking power of the Government may permit." Van Reed v. People's Nat. Bank, 198 U.S. 554, 557, 25 S.Ct. 775, 49 L.Ed. 1161 (1905).

See, also, Casey v. Galli, 94 U.S. 673, 24 L.Ed. 168 (1877).

Nonetheless, the plaintiffs insist that the branching requirements of 12 U.S.C. § 36 are in some fashion applicable to the formation of a new national bank. This contention is at odds with the statutory language referred to above and, further, runs afoul of the Court's language in Ramapo Bank v. Camp, 425 F. 2d 333 (3rd Cir.), cert. denied Ramapo Bank v. Comptroller of Currency, 400 U.S. 8, 28, 91 S.Ct. 57, 27 L.Ed.2d 58 (1970). In a different factual context, the plaintiffs there argued that the relocation of a national bank under 12 U.S. C. § 30 .was invalid because a state bank could not effect a similar relocation. This argument was rejected, the Court of Appeals stating (425 F.2d 344):

> "That Congress has the power to exempt national banks from state regulation is unquestioned. (Citations omitted.) That Congress has done so with regard to the relocation of the main offices of nationally chartered banks is equally certain, both from the lack of express language to the contrary in Section 30, and the absence of contrary suggestion in the Congressional history of the National Bank Act . . ."

Plaintiffs here further assert that the "doctrine of competitive equality" entitles them to the relief sought. This argument was also rejected in this Circuit in Ramapo Bank v. Camp, supra (425 F.2d at 345):

> ". . . if [Prospect Park National Bank] were a state bank, applicable New Jersey banking statutes would not permit it to move its main office to Wayne and, accordingly, under the concept of competitive equality, . . . a national bank is not permitted to move its main office into Wayne. . . .
>
> "It is clear, insofar as Congressional history is concerned, that nothing in the language of Section 30 or in the commentary generated by its passage . . . permits the inference that state law was intended to govern the movement of national bank main offices. It is equally clear that when

Congress enacted Section 36(c) . . . nothing was said concerning the incorporation of state banking laws into Section 30, . . . the language and history of the two sections are clear and unambiguous, and it is quite obvious that the sections have independent statutory scope and purpose."

■ Finally, the plaintiffs claim that "Bricktown will be no more than an 'affiliate' of 'Ocean County' " and urge that such arrangement is condemned by the provisions of 12 · U.S.C. § 36. Whether or not the record will support the finding that such affiliation exists —and we think it does not—that relationship is not proscribed by federal banking law. In Camden Trust Co. v. Gidney, 112 U.S.App.D.C. 197, 301 F.2d 521 at p. 525, cert. denied 369 U.S. 886, 82 S.Ct. 1158, 8 L.Ed.2d 287 (1962) the Court observed that:

> "It is not within our province to pass upon the desirability *vel non* of permitting a national bank to have an 'affiliate,' as the appellant has here used the term. If such an affiliate is to be denied status, Congress must clearly say so. It is sufficient for our disposition of the present controversy to observe that what was done was within the authority conferred by existing statutes. Convinced, as we are, that 12 U.S.C.A. § 36 has no applicability to the situation disclosed on this record, we deem it unnecessary to consider other contentions urged upon us. Accordingly, the judgment of the District Court is
>
> Affirmed."

■ In sum, therefore, even assuming the accuracy of the plaintiffs' factual allegations, they have failed to state a claim upon which relief can be granted. The organization of national banks is controlled entirely by 12 U.S.C. §§ 26 and 27 and N.J.S.A. 17:9A–3.1 does not restrict the formation of a national bank.

Lastly, 12 U.S.C. § 36 concerns itself only with branching by national banks

and in no sense qualifies the chartering provisions of 12 U.S.C. §§ 26 and 27.

The defendant, as we have noted infra, has also moved, in the alternative, for summary judgment. Having determined here that the complaint does not set forth a claim upon which relief can be granted, it becomes, therefore, unnecessary to determine whether or not the Comptroller's preliminary approval comports with the record in that it was not arbitrary or unreasonable. Moreover, in order to grant the plaintiffs' motion for preliminary injunction, the plaintiffs must establish, among other things, that they are likely to prevail upon the merits. See Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). Having decided that the plaintiffs' contentions are not sustainable as a matter of law, it cannot be said that they are likely to prevail upon the merits.

Accordingly, the plaintiffs' demand for a preliminary injunction is denied and the defendants' motion for dismissal on the ground of the plaintiffs' failure to state a claim is granted. An appropriate order will be submitted.