AMERICAN BANK OF TULSA,
Plaintiff,

v.

Justin T. WATSON, acting Comptroller
of the Currency of the United
States, Defendant,

Floyd A. Calvert, Jr., et al., Intervenors.
No. 73–C–16.

United States District Court,
N. D. Oklahoma,
Civil Division.

Dec. 19, 1973.

Jack R. Givens, Tulsa, Okl., for plaintiff.

Robert P. Santee, Nathan G. Graham, Tulsa, Okl., for defendant.

Dickson M. Saunders, William C. Anderson, and John A. Gaberino, Jr., Tulsa, Okl., for intervenors.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This is an action brought by Plaintiff, American Bank of Tulsa, a State bank, seeking judicial review of an administrative action and decision of the Defendant, Comptroller of the Currency of the United States, approving an application for a certificate authorizing the organization of a new national bank to be known as Union National Bank (Union) in Tulsa, Oklahoma. The applicants and organizers of Union have been allowed to intervene herein. Their position is the same as that of the Defendant.

Plaintiff asserts that the Defendant (1) is prohibited by law from approving said application and from issuing said certificate, (2) that in approving the application the Defendant acted arbitrarily, capriciously and abused his discretion and (3) that the Defendant acted unlawfully in failing to issue findings of fact and conclusions of law in connection with his decision. Plaintiff requests that by reason of the above, Defendant be enjoined from issuing a certificate or charter for Union, Defendant and Intervenors deny the validity of any of Plaintiff's assertions.

■■ The action and decision of the Defendant regarding Union is subject to judicial review under the Administrative Procedure Act (APA). 5 U.S.C. § 701 et seq. Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Defendant and Intervenors have filed Motions For Summary Judgment supported by briefs and a certified copy of the administrative file or record of Defendant involving Union. This is an appropriate procedure in connection with the judicial review of an administrative action. Bank of Commerce of Laredo v. City National Bank of Laredo et al., 484 F.2d 284 (Fifth Cir. 1973). Plaintiff opposes the Motions by a Response with supporting brief and certain documents.

■ Plaintiff's ground (3), *supra,* is without merit and should be denied. The recent decision of Camp v. Pitts, *supra,* settled this issue adversely to Plaintiff.[1]

Camp v. Pitts, *supra,* also holds that a reviewing court is not free to hold a de novo hearing unless there are inadequate factfinding procedures in an adjudicatory proceeding or where judicial proceedings are brought to enforce certain administrative actions.

■ This proceeding is not brought to enforce an administrative action. Rather, it is brought to enjoin one. The factfinding procedures employed by the Defendant, as revealed by said administrative record on file herein, and as hereinafter outlined by the Court, are found by the Court to be adequate. Thus, there is no warrant for a de novo hearing.[2]

■ Plaintiff's ground (1), *supra,* is based on the proposition that Union will be a branch bank, that a branch bank is not authorized by Oklahoma law (6 Oklahoma Statutes § 501) and that the Defendant may not authorize or approve a branch bank when State law does not authorize the same. 12 U.S.C. § 36. It appears that Plaintiff also includes under ground (1), *supra,* the Complaint that the certificate to Union would violate Oklahoma law regarding bank holding companies, (6 Oklahoma Statutes § 502) and in citing 12 U.S.C. § 1841 et seq. and Federal Reserve Board Regulations (12 C.F.R. 225.2(a)· and (b) (1973)) presumably would violate Federal laws with reference to subsidiaries and bank holding companies. In Whitney National Bank v. Bank of New Orleans, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed. 2d 386 (1965) it was held that the Federal Reserve Board (FRB) has exclusive jurisdiction over such holding company matters, both State and Federal, by congressional mandate with appeal from such FRB decisions direct to an appropriate Court of Appeals. Therefore, this Court has no jurisdiction to entertain these holding company complaints.[3]

1. This case held:
   "But it is also clear that neither the National Bank Act nor the APA requires the Comptroller to hold a hearing or to make formal findings on the hearing record when passing on applications for new banking authorities."

2. In these circumstances the pending motions for protective orders against the Plaintiff engaging in discovery should be granted.

3. If the Court had jurisdiction these complaints are without merit as shown by the administrative record, have not been the subject of FRB consideration and otherwise are premature and pure speculation.

■ As to the Defendant's certificate violating Oklahoma law prohibiting branch banking, the administrative record does not reveal such a violation nor do Plaintiff's allegations show that Union would be a branch bank. 6 Oklahoma Statutes § 501 provides:

"Branch banking is prohibited in this state. The term 'Branch' used in this section shall be held to include any branch bank, branch office, branch agency, additional office or any branch place of business located within this state at which deposits are received, or checks paid or money lent. . . ."

6 Oklahoma Statutes § 2061 is to the same effect and the Federal definition of a branch bank is the same. See 12 U.S.C. § 36(f). Union would not be the branch bank of another bank within the proscription of said Statutes. It would be chartered as a separate and distinct national bank.[4]

■ The fact that some of the stockholders of Union are also stockholders of another bank will not make Union a branch bank in violation of Oklahoma law. Bank of Commerce of Laredo v. City National Bank of Laredo et al., *supra;* Bank of North America v. State Banking Board, 468 S.W.2d 529, (Tex. 1971). Union's "affiliation" with another bank through overlapping stock ownership is permitted by Federal law, such relationship will be subject to Federal supervision (12 U.S.C. § 221a(b)(2), 371c and 161(c)) and such "affiliation" does not constitute branch banking. Camden Trust Co. v. Gidney, 112 U.S.App.D.C. 197, 301 F.2d 521 (1972), cert. denied, 369 U.S. 886, 82 S. Ct. 1158, 8 L.Ed.2d 287 (1962); Pineland State Bank v. Proposed First National Bank, Bricktown, 335 F.Supp. 1376 (D.N.J.1971). Plaintiff's ground (1), *supra,* has no validity as Union will not be a branch bank in violation of law, this Court has no jurisdiction to consider the holding company complaints and Union's "affiliated" status with another bank is not in violation of law.

■ As to ground (2), *supra,* the Court finds and concludes from an examination of the administrative record that the action and decision of the Defendant is approving the said application and authorizing a charter for Union was not accomplished in an arbitrary or capricious manner and was not an abuse of discretion. To the contrary, the Court finds and concludes said action and decision of the Defendant has a rational and reasonable basis in all respects and was accomplished in accordance with all applicable provisions of the law.

The Defendant's office conducted an exhaustive field investigation under the supervision of a National Bank Examiner. This investigation included interviews of the applicants, notification of the application and solicitation of comments from numerous interested agencies and all banks located in Tulsa County, Oklahoma, some of which banks, including the Plaintiff, filed objections to the proposed charter and requested an administrative hearing. A public file

---

4. Union's separate and distinct status as a national bank is shown by the administrative record in that it will have its own capital funds derived from the sale of its own stock, will have its own directors who will manage its affairs, will have its management responsible to its own Board of Directors, will have its own charter and corporate identity as a national bank, will obtain and be assessed for its own deposit insurance from the Federal Deposit Insurance Corporation, should it or any other bank become insolvent, such insolvency would have no effect on the corporate structure of it or any other entity and should Union desire to terminate banking operations it would have to do so under the supervision of the Comptroller as a separate banking institution. If Union was a branch bank it would have none of the above characteristics—they would all inhere in the bank of which it would be but a branch.

was opened and established pursuant to 12 C.F.R. § 5.3. The requested public hearing was held before a panel in the office of Defendant's Regional Administrator at Dallas, Texas. Extensive testimony and documentary evidence were received and made a part of the administrative record. The entire administrative record was reviewed by the Regional Administrator, the head of Defendant's Bank Organization Section, one of Defendant's senior staff economists and a Deputy Comptroller. Each of these officials recommended approval of the application and in some detail each gave his reasons in support of his recommendation. These reasons and the final approval of the Defendant, all a part of the administrative record, adequately explain the administrative action or decision of Defendant and are of such content as not to frustrate effective judicial review.

The administrative record revealed that economic and population conditions in Tulsa, Oklahoma and in the area to be served by Union were thoroughly developed and that they support approval of the application. Industrial and commercial developments and residential and apartment construction in the area indicate a need for the proposed bank. The closest bank is 2.4 miles away, there is no bank within the service area to be served by Union and the area needs a bank as a public service in the public interest. The phenomenal growth of near-by banks indicates the need for the proposed bank and also establish that competing banks would not be disturbed by the operations of the proposed bank in view of their tremendous growth far beyond anticipated expectations. The organizers presented highly acceptable plans for the establishment of a completely adequate banking facility and they were responsible men with good banking experience in the community.

The complaints of the protesting banks, largely if not solely on the grounds of lack of need and slight chance of financial success, were not supported by the administrative record.

Based on the unanimous recommendations for approval and their supporting reasons made by the investigating National Bank Examiner, the Regional Administrator, the Director of Defendant's Bank Organization Section, the senior staff economist and a Deputy Comptroller and the revelations of the administrative record, the Defendant was completely justified and warranted in approving the said application, such action and decision had a rational and reasonable basis, was not arbitrarily or capriciously made and was not an abuse of Defendant's discretion.

 Plaintiff complains that Defendant did not consider certain material it furnished the Regional Administrator at Dallas, Texas shortly before and on the date of the entry of Defendant's decision in Washington, D. C. and make further inquiry thereon (which material had to do with the Oklahoma State Banking Board disallowing an application for a State bank filed after Intervenors' application was filed, said State bank to be located one mile farther out of town than Union) and that Defendant refused to grant an administrative stay requested by Plaintiff of his approval of Intervenors' application which stay would preclude Union from opening for an indefinite length of time pending judicial proceedings. The grant of such a stay is, of course, within the discretion of the Defendant which in the circumstances the Defendant did not abuse in the judgment of the Court. The new material which had to do with an action of the Oklahoma State Banking Board came after the public hearing, after the public file had been closed,[5] and appar-

---

5. At the public hearing, the Regional Administrator announced near the close thereof:

"In response to Mr. Arrington's request, we will hold the public file open for a pe-

ently did not reach the Defendant before his decision as it did not form a part of the administrative record. The Plaintiff had and attended the public hearing and had an opportunity to present all the material it desired until the public file was officially closed for the submission of additional information. Belated material forwarded after the public file had been officially closed does not invalidate Defendant's decision nor does this circumstance make Defendant's factfinding procedure inadequate. In all such proceedings a time must be fixed for closing the evidence. Plaintiff also complains that certain post-approval letters and a post-approval memorandum written in Defendant's office are not in the administrative record but it appears that all were generated by Plaintiff's post-approval requests for written findings and a stay. Being post-approval they were not before the Defendant when he made his decision. Moreover, they support the decision of Defendant. In these circumstances, this complaint affords Plaintiff no comfort.

In view of the foregoing findings and conclusions of the Court that the Defendant's action and decision under consideration was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, the said action and decision should be affirmed and Defendant's and Intervenors' Motions for Summary Judgment should be granted.

riod of five days following receipt of the transcript in the Regional Office during which time additional information and data may be submitted.

We would ask that information so submitted during that period, copies be provided to the other participants of the hearing today."

The administrative record does not show the exact date that the transcript of the August 16, 1972 hearing was received in the Regional Office at Dallas, Texas. However, as the transcript was forwarded to the Defendant's office in Washington, D. C. as part of the administrative record and as the Director, Bank Organization Division, made his favorable recommendation after a review of the administrative record including said transcript on November 13, 1972, it is definite and certain that the public file was officially closed prior to Defendant's submission of additional information to the Regional Administrator at Dallas, Texas by letters dated November 22, 1972 and December 1, 1972, the latter date being the date of the Defendant's decision herein.