**CENTRAL BANK, a Wisconsin banking Corporation, Plaintiff-Appellant,**

v.

**James E. SMITH, Comptroller of the Currency, et al., Defendants-Appellees.**

No. 75–1924.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 18, 1976.

Decided March 17, 1976.

Rehearing and Rehearing En Banc Denied April 23, 1976.

---

Harold H. Fuhrman, John P. Roemer, Milwaukee, Wis., for plaintiff-appellant.

Leonard Schaitman, John M. Rogers, Attys., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., William P. McGovern, Oak Creek, Wis., for defendants-appellees.

Before SWYGERT, TONE and BAUER, Circuit Judges.

PER CURIAM.

Plaintiff challenges the issuance by the Comptroller of the Currency of a banking charter to the Tri City National Bank of West Allis. The District Court rejected plaintiff's arguments that the operation of the subject bank violates federal and state branch banking laws and that judicial review is frustrated by the inadequacy of the Comptroller's statement of the reasons for his action. *Central Bank v. Smith*, 398 F.Supp. 1403 (E.D.Wis.1975). We affirm.

In 1970, an application by the same organizers for the same location was rejected by the Comptroller on the ground that he believed they should devote their efforts to developing two other relatively new banks in which they had substantial interests. These banks, the Tri City National Banks of Hales Corner and Oak Creek, then had deposits of $581,000 and $5,700,000, respectively. By 1973, when the organizers filed their second West Allis application, those deposits had risen to $5,000,000 and $12,-000,000. The second application was approved, and the West Allis bank began operations. The District Court's denial of a preliminary injunction against its operation was affirmed by this court's order in an earlier appeal.

Over one-half the shares of the West Allis bank are owned by shareholders of the Hales Corner and Oak Creek banks. Consequently, the new bank is an affiliate of the existing banks, 12 U.S.C. § 221a(b)(2), and subject to special regulations. For instance, loans between affiliates must comply with restrictions on amount and must have collateral. 12 U.S.C. § 371c. Besides having common stockholders, the Tri City banks have interlocking directorates and managements. The president of the West Allis bank, a vice president, and two of the seven directors, hold the same offices at the other two banks. According to the Deputy Regional Administrator, however, "[a]ctive management of day to day operations will be provided by Executive Vice President and Cashier J. Schaefer." We are not told that Schaefer holds any position at the other two banks.

On the basis of these facts, plaintiff argues that the West Allis bank is a branch of the other two banks. Although 12 U.S.C. § 36 subjects national banks to state restrictions on the location of branches, federal law determines what is a branch. *First National Bank in Plant City v. Dickinson*, 396 U.S. 122, 133–134, 90 S.Ct. 337, 343, 24 L.Ed.2d 312, 319–320 (1969). A branch relationship may exist even between two separate corporate entities if a "unitary operation" is intended, that is, if one bank is to be an instrumentality of the other or if the two are to be operated as one. *Independent Bank of Georgia v. Board of Gov-*

ernors of Federal Reserve System, 516 F.2d 1206, 1223–1224 (D.C.Cir. 1975); *First National Bank in Billings v. First Bank Stock Corp.*, 306 F.2d 937, 942 (9th Cir. 1962). On the other hand, "it is not enough to show that common control through stock ownership by [the parent bank], which participates actively in the management of its subsidiaries, produces cooperation or even eliminates competition between the subsidiaries." *Id.*

Plaintiff's argument is based on *Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 116 U.S.App. D.C. 285, 323 F.2d 290 (1963), *reversed on other grounds*, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). In *Whitney*, and a more recent case, *Independent Bank of Georgia, supra*, the District of Columbia Circuit has found either branch banking (*Whitney*) or "a strong facial probability of a 'unitary operation'," *Independent Bank of Georgia, supra*, 516 F.2d at 1223. In both of those cases, unlike the present case, there was direct evidence that the subsidiaries were to be integral parts of a unified banking operation. In *Whitney*, the entire arrangement was said by management to be "part of an overall plan for the operation . . . of the Whitney organization" and "a method of pooling all of the deposits of our customers and of our capital funds." 323 F.2d at 303, 304. In *Independent Bank of Georgia*, a substantial part of the parent's mortgage activity was to be transferred to a subsidiary specializing in mortgages. 516 F.2d at 1223.

A more fundamental distinction is that these cases deal with holding companies rather than affiliates. By use of a holding company, a parent bank can exercise permanent (see *Whitney National Bank v. Bank of New Orleans, supra*, 323 F.2d at 304) and total control over the subsidiary, through its control of voting stock. *Independent Bank of Georgia v. Board of Governors of Federal Reserve System, supra*, 516 F.2d at 1223. In contrast, shareholders of existing affiliates can control a new bank

only if they vote as a block, and even then their control is incomplete. For instance, the cumulative voting required by 12 U.S.C. § 61 (1975 Supp.) guarantees minority representation on the board of directors.

We agree with the District Court that the controlling case is *Camden Trust Co. v. Gidney*, 112 U.S.App.D.C. 197, 301 F.2d 521 (1962), *cert. denied*, 369 U.S. 886, 82 S.Ct. 1158, 8 L.Ed.2d 287. In that case the directors of an existing bank attempted to organize a new bank, which was to be an affiliate of the existing bank. 301 F.2d at 522, 523 n. 7. It was expected that the new bank's affairs would be "conducted by the same management and under the same policies" as the existing bank. *Id.* The court held that the new bank would not be a branch of the existing bank. *Camden Trust* is in line with more recent cases which have also rejected branch-bank attacks on affiliates. *American Bank of Tulsa v. Watson*, 391 F.Supp. 573, 576 (N.D.Okl.1973), *aff'd*, 503 F.2d 784, 785, 786, 789 (10th Cir. 1974);[1] *Pineland State Bank v. Proposed First National Bank of Bricktown*, 335 F.Supp. 1376, 1380 (D.N.J.1971).

█ The fact that here the names of the affiliates are similar does not serve to distinguish *Camden Trust*. Cf. *Whitney National Bank v. Bank of New Orleans, supra*, 323 F.2d at 304. The similarity of names does not establish an intent to engage in a unitary operation; the name of the West Allis bank was chosen by the Comptroller from a list submitted by the organizers. We conclude that the West Allis bank is not a branch of its affiliates.

The plaintiff's second argument, based on *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), is that judicial review is frustrated by the Comptroller's inadequate explanation of his decision. In *Camp*, the Comptroller rejected an application because of "the need factor." The Court of Appeals was unable to determine what this term meant or what specific factors the Comptroller considered. 463 F.2d 632, 634

---

1. The mandate of affirmance in *American Bank of Tulsa* was stayed to allow a holding company issue to be presented to the Federal Reserve Board. 503 F.2d at 789. The government informs us that an order of affirmance was subsequently entered on March 12, 1975.

(4th Cir. 1972). In the Supreme Court the Comptroller challenged only the form of relief granted by the Court of Appeals, remand for a trial de novo. The Supreme Court held that the proper relief was to obtain a further explanation from the agency through affidavits or testimony. *Camp v. Pitts, supra,* 411 U.S. at 143, 93 S.Ct. at 1244, 36 L.Ed.2d at 111. The Court cautioned that the Comptroller's action "must stand or fall" with the "determinative reason" underlying the explanation already given. Nothing in *Camp* supports the plaintiff's view that the Comptroller's action must be vacated as arbitrary and capricious when the Comptroller's explanation is vague or unclear.

■ Moreover, we do not find the explanation the Comptroller has already given so vague or inadequate as to frustrate judicial review and require clarification. The Comptroller's explanation of his approval of the 1973 application is as follows:

"The banking organizers appear to have done a commendable job in the organization development and management of two other national banks in the Greater Milwaukee Area.

"While there are a number of banks in the general vicinity of the proposed bank, the institutions in the immediate trade area are state-chartered institutions.

"The entry of a well-managed national bank should offer some useful competition and thus contribute to serving the convenience & needs of the public in the West Allis area.

"I conclude that the application (on reconsideration) should be approved."

Plaintiff complains that the Comptroller did not say whether his decision was based on the 1970 administrative record or the 1973 administrative record. The Comptroller's language indicates, however, that he did consider the 1973 record. The first sentence of his explanation refers to the organizers' success in managing the two existing banks, one of which had barely opened in 1970, and the second sentence speaks in the present tense of banking conditions in the area. We reject the contention that the Comptroller may simply have reconsidered the 1970 record.

Although the Comptroller's explanation is terse, plaintiff has not shown that it is unsupported by the 1973 record or that there are seriously contested, significant issues the Comptroller did not address.[2] Consequently, the District Court was correct in upholding the Comptroller's decision without requesting further clarification. *City National Bank v. Smith,* 513 F.2d 479, 480, 484 (D.C.Cir. 1975).

AFFIRMED.

---

2. Plaintiff does not contend that the explanation was inadequate because the Comptroller did not discuss the branch-bank issue, or that the Comptroller failed to consider the issue.