

# THE ATTORNEY GENERAL
## OF TEXAS

February 2, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Lloyd Criss
Chairman
Labor and Employment
   Relations Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No.JM-630

Re: Constitutionality of amend-
ments to article 342-101, et
seq., V.T.C.S., the Interstate
Banking Bill

Dear Representative Criss:

You ask several questions about the Interstate Banking Bill enacted during the recent called session of the legislature. Acts 1986, 69th Leg., 2nd C.S., ch. 14, at 71. Bank holding companies are regulated pursuant to the federal Bank Holding Company Act of 1956, as amended, 12 U.S.C. §§1841 et seq. The act provides the following in pertinent part:

> Notwithstanding any other provision of this section, no application . . . shall be approved under this section which will permit any bank holding company or any subsidiary thereof to acquire, directly or indirectly . . . any additional bank located outside the state in which the operations of such bank holding company's banking subsidiaries were principally conducted on July 1, 1966, or the date on which such company became a bank holding company, whichever is later, unless the acquisition . . . is specifically authorized by the statute laws of the state in which such bank is located, by language to that effect and not merely by implication. (Emphasis added).

12 U.S.C. §1842(d). The second called session of the Sixty-ninth Legislature enacted amendments to articles 342-101, et seq., V.T.C.S., [hereinafter the Interstate Banking bill] that were intended to constitute such specific authorization, permitting out-of-state bank holding companies to acquire a state or national bank or bank holding companies owning or controlling a state or national bank located in Texas. Acts 1986, 69th Leg., 2nd C.S., ch. 14, at 71.

p. 2842

Article XVI, section 16, of the Texas Constitution, however, provides in pertinent part:

> Sec. 16. (a) The Legislature shall by general laws, authorize the incorporation of state banks and savings and loan associations and shall provide for a system of state supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof.
>
> . . . .
>
> No foreign corporation, other than the national banks of the United States domiciled in this State, shall be permitted to exercise banking or discounting privileges in this State. (Emphasis added).

You are concerned that the recent bill may violate the underscored portion of article XVI, section 16. Accordingly, you ask a series of questions regarding the proper construction and constitutionality of the recent statutory amendments. We will address each of your questions in turn.

With your first question you ask:

> If a foreign corporation acquires a state or national bank domiciled in Texas, will that foreign corporation be in violation of article XVI, section 16, of the Texas Constitution by virtue of its direct exercise of banking or discounting privileges in Texas? (Emphasis added).

We answer your first question in the negative. The Interstate Banking Bill does not purport to authorize foreign corporations to engage in banking and discounting privileges. Rather it merely authorizes out-of-state bank holding companies to purchase Texas state or national banks or bank holding companies. Section 5 of the bill amends the Texas Banking Code of 1943 by adding article 342-916, V.T.C.S., which provides the following:

> Section 1. Except as otherwise provided by this article, an out-of-state bank holding company may, directly or indirectly, acquire or acquire control of a state bank, national bank located in the state, or bank holding company owning or controlling, directly or indirectly, a state bank or national bank located in the state.

Acts 1986, 69th Leg., 2nd C.S., ch. 14, section 5, at 81. The bill in section 1 defines "control" as

> [t]he ability or power to vote, directly or in-directly, 25 percent or more of any class of voting securities or the ability to control in any manner the election of a majority of the board of directors.

The Banking Code, as amended, still requires that any corporation that exercises banking and discounting privileges in the state of Texas be a Texas corporation.

Your next question is:

> Does the legislative history of article XVI, section 16, which was enacted prior to the institutional use of holding companies, indicate that the intent of this article was to prohibit foreign ownership of banks, as well as the exercise of banking and discounting privileges in Texas?

We answer your question in the negative. There is little legislative history extant regarding the adoption of the 1904 amendment to article XVI, section 16. That which does exist indicates no intention to forbid foreign ownership of banks in Texas; rather, foreign operation of banks was intended to be prohibited. The House Journal entry for the proposed constitutional amendment to article XVI, section 16, recites among its purposes to be "prohibiting foreign corporations with such powers [banking and discounting privileges] to do business in this State." H. J. of Tex., 28th Leg., Reg. Sess. 633 (1903).

You next ask:

> Does the legislative history of article XVI, section 16, further indicate that the intent of this article is to allow for major changes in banking policy and procedures in this state, such as that proposed by Senate Bill No. 11, to be made only upon the passage of a constitutional amendment duly enacted by the voters?

Again, there is little legislative history extant on the 1904 amendment. If the legislature had intended that foreign ownership, as opposed to foreign operation, of banks in Texas be prohibited, it would have specifically so stated. More important, it is a well-established principle that the legislature, in the absence of an

express constitutional prohibition or requirement, has the power to enact significant legislation without express voter approval of those changes.

> The legislative department of the state government may make any law not prohibited by the constitution of the state or that of the United States. Therefore, the rule is that, in order for the courts to hold an act of the legislature unconstitutional, they must be able to point out the specific provision which inhibits the legislation. If the limitation be not express, then it should be clearly implied.

Shepherd v. San Jacinto Junior College Dist., 363 S.W.2d 742, 743 (Tex. 1962), quoting State v. Brownson, 61 S.W. 114 (Tex. 1901). As the Texas Supreme Court declared in Texas National Guard Armory Board v. McCraw, 126 S.W.2d 627, 634 (Tex. 1939), quoting Middleton v. Texas Power and Light Co., 249 U.S. 152, 157 (1919).

> There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.

While the Interstate Banking bill undoubtedly effects a major change in the Banking Code, it does not permit anything which is expressly or impliedly prohibited by the Texas Constitution.

You next ask:

> On what basis is there a distinction between the institution of branch banking through a constitutional amendment (S.J.R. 4), and the institution of interstate banking through statutory legislation?

The distinction is simply that the limited form of branch banking authorized by Senate Bill No. 10 (Acts 1986, 69th Leg., 2nd C.S., ch. 13, at 63) was prohibited by article XVI, section 16; accordingly a constitutional amendment was required to permit it. On the other hand, ownership of Texas banks by out-of-state holding companies is not prohibited by article XVI, section 16; only operation of banks by foreign holding companies in Texas is prohibited. And the Interstate Banking bill authorizes foreign ownership, not foreign operation.

You next ask:

> If the foreign corporation, on a direct basis, is not in violation of the above referenced article, will the foreign corporation's exercise of control over the state or national bank domiciled in this state result in the foreign corporation exercising banking or discounting privileges in this state?

It is important to note the actual effect of the Interstate Banking bill. Prior to its passage, Texas banking was dominated by four "giant" holding companies that, in the aggregate, controlled over 200 banks in the state. Each of the four is a Delaware corporation. See generally Zamora, Regulating Foreign Bank Operations in Texas, 19 Hous. L. Rev. 427 (1982). The assets of each corporation consist of stock in Texas banks. The Interstate Banking bill merely permits out-of-state holding corporations whose assets consist of stock of banks in other states to acquire also the stock of Texas banks; it does not permit such holding companies to disregard the separate corporate existence of the banks owned by it in violation of the Texas Constitution.

In Attorney General Opinion H-606 (1975), this office concluded that the ownership by a bank holding company of more than 50 percent of the capital stock of two or more Texas banks did not violate the branch banking prohibition of article XVI, section 16, of the Texas Constitution. The opinion specifically focused on the distinction between ownership of stock in more than one bank by a bank holding company and the operation of one bank by another. The opinion relied in part on a report issued by the Attorney General on August 18, 1952, to the State Banking Board, and in part on Bank of North America v. State Banking Board, 482 S.W.2d 923 (Tex. Civ. App. - Austin 1972), aff'd per curiam, 492 S.W.2d 458 (Tex. 1973), cases involving a challenge on the basis of an alleged violation of the branch banking prohibition to the granting of an application for a bank charter. The court of appeals, whose opinion was affirmed per curiam, declared that "[t]he bare fact of ownership [of one bank's stock by another bank], without more, does not constitute a violation of section 16." 468 S.W.2d 532. The Texas Supreme Court, in affirming the decision below, expressed the relevant issue as "whether the proposed or chartered bank was actually controlled or operated directly or indirectly by another bank. . . ." 492 S.W.2d at 459. The court further noted that the aforementioned Attorney General's report stated that

> even after a charter is granted to a bank, the operation and control exercised over it by another bank may under certain fact situations constitute violations of the anti-trust laws and the prohibition against branch banking.

Id. at 459-60. Attorney General Opinion H-606 then concluded that such stock ownership of one bank's stock by another bank or a bank holding company is not a violation of the branch banking prohibition per se, but that "[o]ne bank controlled by a bank holding company may so dominate and control the operation of another bank as to violate these provisions in a particular case."

Analogously, we conclude that the ownership, without more, of bank stock by an out-of-state bank holding company does not violate per se the article XVI, section 16, prohibition against a foreign corporation exercising banking and discounting privileges. If, however, the holding company acts in a way to disregard the separate corporate existence of individual banks, then we think that courts would conclude that article XVI, section 16, had in fact been violated. See generally Lane v. Dickinson State Bank, 605 S.W.2d 650 (Tex. Civ. App. - Houston [1st Dist.] 1980, no writ); American Petrofina Co. of Texas v. Crump Business Forms, Inc., 597 S.W.2d 467 (Tex. Civ. App. - Dallas 1980, writ ref'd n.r.e.); State v. Nevitt, 595 S.W.2d 140 (Tex. Civ. App. - Dallas 1980, writ ref'd n.r.e.) (courts invoke "alter ego" doctrine to disregard separate corporate existence). Each instance involving disregard of the corporate entity must rest on its own facts. Rosenthal v. Leaseway of Texas, Inc., 544 S.W.2d 180 (Tex. Civ. App. - Tyler 1976, no writ).

Your request next sets forth the following:

> I note that Senate Bill No. 11, in section 3, which amends article 342-912, V.T.C.S., requires, in section 4(2):

>> (2) evidence that the out-of-state bank holding company and each state bank, national bank in this state, and bank holding company being acquired will, after the acquisition, comply with applicable capital adequacy guidelines, and that the consolidated equity capital condition of these banks in this state during the first three years after being acquired will be maintained at least at the level existing immediately prior to the acquisition less the consolidated net loss of these banks, if any;

>> This language treats the equity capital condition of the banks to be acquired on a consolidated basis. By referring to the 'consolidated equity capital condition of these banks,' Senate Bill No. 11 places a requirement in the out-of-state bank holding company. As such,

> it implies a condition wherein the out-of-state
> bank holding company will be directing the affairs
> of the acquired banks on a consolidated basis
> rather than on an individual bank basis.

Accordingly, you ask:

> Does this make the out-of-state holding company
> a bank? Does the consolidated equity capital
> condition violate the constitutional prohibition
> on a foreign corporation exercising banking or
> discounting privileges in this state?

We answer both of your questions in the negative. The provisions of article 342-912, V.T.C.S., were first enacted in 1977 and govern the conditions under which a holding company may acquire Texas banks. The amendment to article 342-912, V.T.C.S., contained in section 3 of the Interstate Banking bill merely imposes an additional condition on out-of-state bank holding companies not required of Texas holding companies. This additional requirement does not eliminate or affect any other regulatory requirements regarding the adequacy of bank capital. See, e.g., 12 U.S.C. §§51, 3907(a). More important, this additional requirement confers no authority on the holding company to direct, either on a consolidated basis or on an individual basis, the operations of Texas banks. It is still the case that the separate corporate identity of the subsidiary banks must be respected, and the requirements regarding equity capital of state banks and national banks that are imposed, by state and federal law, respectively, must be adhered to. Furthermore, the act does not confer authority on the holding company, even after the expiration of the three-year period, to control the capital condition of the bank. Were the statute to authorize such operational control, serious constitutional questions might arise.

You next ask:

> Does the treating of equity capital position on
> a consolidated basis allow for a holding company
> owning two or more banks to undercapitalize one of
> those banks so long as the capital condition of
> all of the acquired banks, when viewed on a
> consolidated basis, is adequate?

We answer your question in the negative. As we noted above, the equity capital requirements imposed upon individual state and national banks by state and federal law are unaffected by the Interstate Banking bill. Accordingly, if the applicable provisions are followed, no individual bank should be undercapitalized.

You note that:

> The Texas Constitution presently provides, in part:

>> Sec. 16(a)  The Legislature shall by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of State supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof.

> If the constitutional amendment set forth in S.J.R. 4 is passed, this section will be amended to read as follows:

>> Sec. 16(a)  The Legislature shall by general laws, authorize the incorporation of state banks and savings and loan associations and shall provide for a system of State supervision, regulation, and control of such bodies which will adequately protect and secure the depositors and creditors thereof.

You then ask:

> Does the ability of a foreign corporation under Senate Bill No. 11 to acquire and control a state bank in Texas violate the existing or the proposed constitutional provision that the legislature provide 'for a system of State supervision, regulation and control of such bodies which will adequately protect and secure depositors and creditors thereof?'  Specifically, we would direct your attention at the ability of such foreign corporations to direct deposits in the state bank for use by the foreign corporation, especially through other financial institutions that it may own outside the state of Texas.

We cannot answer this question because to do so would require resolution of a matter of fact.  Questions of fact are inappropriate for consideration in the opinion process.  We cannot say as a matter of law that the state system of regulation imposed by the Banking Code fails to "adequately protect and secure depositors and creditors" of Texas banks.  We emphasize that the bill neither authorizes an out-of-state holding company to disregard the independent corporate existence of subsidiary state or national banks (which, if it did so,

would violate the prohibition on foreign corporations exercising banking and discounting privileges), nor alters the applicable equity capital requirements that were imposed prior to the enactment of the Interstate Banking bill.

Your request next sets forth the following:

> As noted above, Senate Bill No. 11 requires the out-of-state bank holding company to maintain at least the consolidated equity capital condition of the acquired banks at the existing level immediately prior to the acquisition for the first three years after acquisition. Does the fact that the foreign corporation, after it has acquired the bank, can permit the equity capital condition of the bank to deteriorate after the first three years violate the constitutional provision that the legislature establish by general laws a system of state supervision which will adequately protect and secure the depositors and creditors of state banks in Texas?

Again, we cannot say that, as a matter of law that the bill violates article XVI, section 16. The act confers no operational control to the holding company. And again, we note that the bill does not alter the equity capital requirements that were applicable prior to the enactment of the bill; individual state and national banks will still have to adhere to the respective state and federal provisions.

You note that article 14(b) of Senate Bill No. 11 states, in part:

> The Commissioner has jurisdiction over an out-of-state bank holding company to enforce an agreement filed with the Commissioner under Article 12 of this Chapter.

In that regard, you ask:

> Will the commissioner have the legal authority to enforce all aspects of those agreements, or can the commissioner be prohibited from doing so as a matter of federal law or the law of the state of the foreign corporation?

Generally, the validity of contracts is controlled by the law of the place where the contract was made. King v. Bruce, 201 S.W.2d 803 (Tex. 1947), cert. denied, 332 U.S. 769 (1947); Grace v. Orkin Exterminating Co., 255 S.W.2d 279 (Tex. Civ. App. - Beaumont 1953,

writ ref'd n.r.e.).  Because the agreements entered into under the bill will be made and performed in Texas, clearly the laws of the foreign state would not pre-empt those of Texas.  With respect to the federal government, the bill specifically provides that any agreements entered into pursuant to the bill are "subject to any contrary provision of applicable federal law."  Acts 1986, 69th Leg., 2nd C.S., ch. 14, §3, at 78.  Accordingly, we conclude that the commissioner would have the authority to enforce all aspects of any agreements entered into pursuant to the bill except as would violate federal law.

## S U M M A R Y

The 1986 amendments to the Banking Code of 1943, which authorize out-of-state bank holding companies to purchase control of Texas state and national banks pursuant to the federal Bank Holding Company Act of 1956, does not violate article XVI, section 16, of the Texas Constitution.

Very truly yours

JIM   MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General